## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AMERICAN WESTERN HOME INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.: 10-516-CG-N** |
| **v.** | ) ) | |
| **ALFRED REESE and FRANCINE REESE,** | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| **Defendants.** | ) | |

## AMERICAN WESTERN HOME INSURANCE COMPANY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, American Western Home Insurance Company ("American Western") moves the Court to enter a summary judgment in its favor as to all claims presented in this case. There is no genuine issue as to any material fact, and American Western is entitled to judgment as a matter of law. For the reasons set forth herein, American Western's motion for summary judgment should be granted.

## SUMMARY OF THE ARGUMENT

This declaratory judgment action arises from the Reeses attempt in 2009 to supplement a Hurricane Katrina insurance claim originally adjusted and paid in 2005. The 2009 claim is over eleven times the amount of the original claim and is unsubstantiated by any documentary proof.

Within three months of Hurricane Katrina, American Western paid $25,081.69 to Alfred and Francine Reese for damage sustained by the Crest Motel during the storm. This payment matched the amount indicated on Sworn Statements In Proof of Loss the Reeses executed after the completion of the adjusting process. After they accepted the payment on their claim, American Western did not hear from the Reeses again until approximately three-and-a-half years later when they submitted a new Sworn Statement In Proof of Loss seeking to recover $272,463.38 for the damage sustained during Katrina, along with a letter demanding an appraisal.

When American Western attempted to investigate this supplemental claim, the Reeses testified that they had completed all of the necessary repairs to the motel several years earlier, but they were unable to produce any receipt, invoice, contract or other written record of any kind substantiating their expenses.

The Reeses are not entitled to an appraisal. American Western denies that the Crest Motel suffered losses during Katrina that even come close to approaching the Reeses' current claim. There is no proof that the Crest Motel suffered substantial damage beyond what the parties agreed to in 2005. These threshold questions of coverage and causation preclude an appraisal.

American Western promptly adjusted this loss and paid an amount agreed to by the Reeses. If they disagreed with the original adjuster's conclusions, they

should have advised American Western before supposedly making hundreds of thousands of dollars worth of repairs to the motel. They should have kept records of the expenses they supposedly incurred. Their failure to do any of the foregoing has severely prejudiced American Western's ability to investigate the supplemental claim.

The Reeses' counterclaims for breach of contract and bad faith are due to be dismissed. Having paid what was originally agreed, American Western has not breached its contract, precluding any bad faith claim. Moreover, any bad faith claim the Reeses might otherwise have has been time-barred since 2007.

## <u>NARRATIVE SUMMARY OF UNDISPUTED FACTS</u>

1.   Alfred and Francine Reese are husband and wife, and they own and operate the Crest Motel as a sole proprietorship. (Case 1:10-cv-00516, Document 1 at ¶ 4; Document 6 at ¶ 4).[1]

2.   American Western Home Insurance Company issued an insurance policy to Crest Motel (policy no. ZE5001077D) for the policy period January 13, 2005 to January 13, 2006 ("the Policy"). (Case 1:10-cv-00516, Document 1-1).

3.   The Policy was an "actual cash value" policy for purposes of property damage claims. (Case 1:10-cv-00516, Document 1 at ¶ 11; Document 6 at ¶ 11).

---

[1] Alfred and Francine Reese are sometimes referred to herein collectively by their business name, the Crest Motel.

4.     On or about August 29, 2005, the Crest Motel sustained damage as a result of high winds during Hurricane Katrina.  (Case 1:10-cv-00516, Document 1 at ¶ 16; Document 6 at ¶ 16).

5.     The Reeses made a claim under the Policy for this damage.  (Case 1:10-cv-00516, Document 1 at ¶ 16; Document 6 at ¶ 16).

6.     Property Loss Services, Inc. ("PLS") adjusted the loss on behalf of American Western.  (Affidavit of Mike Gates; Exhibit 6 to Examinations Under Oath of Alfred and Francine Reese ("EUO's")).

7.     PLS inspected the Crest Motel on or about September 26, 2005. (Affidavit of Mike Gates).

8.     PLS prepared a detailed estimate of the damage to the Crest Motel which appeared to have resulted from Hurricane Katrina.  (Affidavit of Mike Gates; Exhibit 6 to EUO's).

9.     Francine Reese prepared two damage estimates between September 21, 2005, when she exchanged e-mails with the adjuster (Exhibit 2 to EUO's), and November 7, 2005, when PLS sent out its loss estimates and Sworn Statements In Proof of Loss for review and execution.  (Francine Reese EUO at 16-18, 63; Exhibits 10 and 11 to EUO's).

4

10.    Mrs. Reese's written estimates identified storm damage to the roof, to the motel sign, and to three specific rooms, along with an inventory of damaged personal property.  (EUO of Alfred Reese at 76-78; Exhibits 10 and 11 to EUO's).

11.    Mrs. Reese's written estimates valued the Crest Motel's claim at either $38,484.22 or $36,934.22.  (Exhibits 10 and 11 to EUO's).

12.    The adjuster from PLS who inspected the property identified storm damage to the roof, to the motel sign, to the laundry room, to three specific motel rooms, and to various articles of personal property.  (Affidavit of Mike Gates; Exhibit 6 to EUO's).

13.    Both Mrs. Reese's damage estimate and PLS's estimate identified three specific motel rooms, 30, 31, and 36, as having sustained damage.  Neither estimate mentions any other motel rooms.  (Exhibits 6, 10 and 11 to EUO's).

14.    On November 7, 2005, after its adjusting process was complete, PLS sent copies of its detailed estimates to the Crest Motel along with two Sworn Statements in Proof of Loss, one of which was for "business personal property" and the other was for damage to the building itself.  (Exhibit 6 to EUO's; Francine Reese EUO at 34).

15.    All discussion between the Reeses and PLS about the Crest Motel's Hurricane Katrina claim took place after Hurricane Katrina but before the November 7, 2005 letter went out.  (Francine Reese EUO at 63).

5

16.     Before the November 7, 2005 letter from PLS went out, PLS notified the Reeses in a phone call of the amount of the payments.  (Francine Reese EUO at 58-59).

17.     The Reeses have testified that PLS told them in this phone call that American Western was not going to pay any more than the amount indicated in the estimates it had prepared.  (Francine Reese EUO at 58-59).

18.     During that phone call, Mrs. Reese expressed her disagreement with the amount of the payments.  (Francine Reese EUO at 58-59).

19.     Both the detailed report from PLS and the proofs of loss estimated the net actual cash value, after applying the deductible, to be $22,648.91 for the damage to the building and $2,432.78 for the damage to personal property. (Exhibit 6 to EUO's).

20.     Both Alfred and Francine Reese executed the proofs of loss which accompanied the detailed PLS estimates.  (Exhibits 4 and 5 to EUO's; Alfred Reese EUO at 44-45; Francine Reese EUO at 62).

21.     Neither Francine Reese nor Alfred Reese had any discussions with American Western or PLS after receiving the detailed PLS estimates.  (Francine Reese EUO at 63).

22.     In November 2005, American Western sent checks to Crest Motel in the amount of $2,432.78 and $22,648.91.  (Exhibits 7 and 8 to EUO's).

6

23.   Francine Reese negotiated these checks.  (Francine Reese EUO at 62).

24.   The canceled checks bear a date of November 21, 2005 below Francine Reese's endorsement, indicating she negotiated them no later than that date.  (Exhibits 7 and 8 to EUO's).

25.   Alfred Reese testified that after Hurricane Katrina, a contractor repaired the Crest Motel's roof in a good and workmanlike manner.  (Alfred Reese EUO at 65).

26.   The Reeses completed the Katrina-related repairs to the Crest Motel in 2006.  (Francine Reese EUO at 26).

27.   Alfred Reese admitted that he does not know whether some repairs he claims to have made were the result of Katrina-related damage.  (Alfred Reese EUO at 96).

28.   Approximately three-and-a-half years after the Reeses' last communication with the claims adjuster, on May 15, 2009, an attorney acting on behalf of the Crest Motel sent a letter to American Western demanding an appraisal and enclosing what was claimed to be an estimate of damages sustained in Hurricane Katrina.  (Exhibit 14 to EUO's).

29.   This estimate bears a date of November 11, 2008.  (Exhibit 14 to EUO's).

B DWM 946334 v1
2902013-000037 01/06/2011

30.    The estimate submitted with the May 15, 2009 letter estimates the total value of the claim to be $246,313.54. (Exhibit 14 to EUO's).

31.    On October 7, 2009, an attorney acting on behalf of the Crest Motel sent a letter to American Western enclosing a Sworn Statement in Proof of Loss executed by Francine Reese and what was claimed to be an estimate of damages sustained in Hurricane Katrina. (Exhibit 13 to EUO's; Francine Reese EUO at 51).

32.    The estimate submitted with the October 7, 2009 letter estimates the total value of the claim to be $274,963.38. (Exhibit 13 to EUO's).

33.    This estimate bears a date of October 20, 2008. (Exhibit 13 to EUO's).

34.    The Sworn Statement In Proof of Loss which accompanied the October 7, 2009 letter claimed that the damages from Hurricane Katrina totaled $272,463.38. (Exhibit 13 to EUO's).

35.    Both of the estimates prepared in 2008 and submitted on behalf of the Crest Motel in 2009 suggested that the damage sustained by the Crest Motel in Hurricane Katrina greatly exceeded the damage contemplated in the Sworn Statements in Proof of Loss executed by Alfred and Francine Reese in 2005 and the estimate which accompanied the original Sworn Statements in Proof of Loss. (Exhibits 4, 5, 6, 13, and 14 to EUO's).

B DWM 946334 v1
2902013-000037 01/06/2011

36.    For example, where the 2005 estimates indicated damage to three motel rooms, the 2008 estimates indicated damage to 14 motel rooms. (Exhibits 6, 13, and 14 to EUO's).

37.    Alfred Reese has testified he has no idea how much money the Crest Motel spent on repairs after Hurricane Katrina. (Alfred Reese EUO at 108).

38.    Francine Reese testified that she is "not really sure" how much money the Crest Motel spent on repairs after Hurricane Katrina. (Francine Reese EUO at 29).

39.    The Reeses have no documentation to support the expenditures they supposedly made on Hurricane Katrina repairs, such as contracts, invoices, receipts, proofs of payment, bills of sale, credit card statements, or cancelled checks. (Alfred Reese EUO at 20; Francine Reese EUO at 30-31).

## ARGUMENT

This declaratory judgment action involves the construction of an insuring agreement delivered to an insured in Alabama, and, therefore, the substantive law of Alabama applies. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938); *see also Pan Am. Fire & Cas. Co. v. Edwards Aircraft, Inc.,* 377 F. Supp. 205, 208 (N.D. Ala. 1974) (applying substantive law of Alabama to insurance coverage dispute); *Cherokee Ins. Co. v. Sanches,* 975 So. 2d 287, 293 (Ala. 2007) (law of state where an insurance policy is issued applies when interpreting that policy).

9

Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy. *See Colonial Life & Acc. Ins. Co. v. Collins,* 194 So. 2d 532, 535 (Ala. 1967). The insurer bears the burden of proving any applicable policy exclusion. *See United States Fid. & Guaranty Co. v. Armstrong,* 479 So. 2d 1164, 1168 (Ala. 1985).

## I.   THE REESES' BAD FAITH COUNTERCLAIM IS TIME-BARRED.

The statute of limitations for bad faith claims is two years because it is based in tort, not contract. *Dumas v. Southern Guar. Ins. Co.,* 408 So. 2d 86, 88 (Ala. 1981); *see also* ALA. CODE § 6-2-38(*l*) (1975). If the Reeses have a bad faith claim, which American Western denies, it has been time barred for nearly three years.

The Reeses' counterclaim attempts to state a claim for "bad faith refusal to pay," but, as set forth in American Western's factual narrative, this case does not involve a refusal to pay. American Western paid $25,081.69, on the claim after receiving two duly executed Sworn Proofs of Loss from the Crest Motel's owners totaling precisely that amount. (Exhibits 4, 5,7 and 8 to EUO's). Any bad faith claim would have to be premised on an underpayment by American Western.

American Western issued its payments to the Crest Motel on November 16, 2005, and Francine Reese negotiated the checks soon afterwards. (Alfred Reese EUO at 60-61; Francine Reese EUO at 62; Exhibits 7 and 8 to EUO's). The

10

canceled checks endorsed by Francine Reese bear a date of November 21, 2005 below the endorsement, indicating she negotiated them no later than that date. (Exhibits 7 and 8 to EUO's). Francine Reese testified that she and her husband complained about the amount of these payments **before** the checks were issued. (Exhibits 4, 5, and 6 to EUO's; Francine Reese EUO at 58-59). Thus, at the time these checks arrived, the owners of the Crest Motel were subjectively dissatisfied with the amount and believed the payment to be inadequate. It was at this point their bad faith claim accrued. **The statute of limitations on this claim ran no later than November 21, 2007.**

"A cause of action for bad faith refusal to pay insurance benefits accrues for statute of limitations purposes when the party seeking to bring the action knew of facts which would put a reasonable mind on notice of the *possible existence* of [bad faith]." *Alfa Mut. Ins. Co. v. Smith*, 540 So. 2d 691, 692-93 (Ala. 1988) (emphasis in original) (internal quotations omitted). To the extent the Reeses seek to pursue a theory of bad faith underpayment of a claim, they knew of the existence of this alleged underpayment no later than the moment the checks arrived, even if they did not know the full extent of the motel's alleged damage. "The statute of limitations on a claim begins to run when a cause of action accrues." *Chandiwala v. Pate Constr. Co.*, 889 So. 2d 540, 543 (Ala. 2004) (citing *Home Ins. Co. v. Stuart–McCorkle, Inc.*, 285 So. 2d 468 (Ala. 1973)). "A cause of

11

action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury." *Chandiwala*, 889 So. 2d at 543 (citing *Smith v. Medtronic*, 607 So.2d 156 (Ala. 1992)).

Here, the Reeses allege the payments on their Hurricane Katrina claim were insufficient. They admit they knew this in 2005. That they did not know the exact amount or extent of the underpayment is unimportant. Under Alabama law, the claim accrued the moment they were placed on notice that the claim payments were somehow insufficient. They knew of this so-called underpayment on November 21, 2005 at the absolute latest. They did not file their bad faith claim until October 14, 2010 – approximately 59 months after the claim accrued.

## II.   THE REESES' BAD FAITH CLAIM FAILS ON THE MERITS.

American Western has already demonstrated that the Reeses' bad faith claim is time-barred. Even if their claim could somehow be considered timely, it fails on the merits because American Western did not breach the contract, and its conduct in handling the claim was otherwise in good faith.

### A.   AMERICAN WESTERN HAS NOT BREACHED ITS CONTRACT WITH ITS INSURED.

In order to prevail on their breach of contract claim, the Reeses must prove (1) the existence of a valid contract, (2) their performance under the contract, (3) American Western's nonperformance under the contract, and (4) resulting

12

damages. *See State Farm Fire and Cas. Co. v. Williams,* 926 So. 2d 1008, 1012 (Ala. 2005). Other than the first of these elements, the Reeses cannot establish any aspect of their breach of contract claim. There is no dispute that the owners of the Crest Motel executed Sworn Statements in Proof of Loss in which they valued their loss at a total of $25,081.69, and there is likewise no dispute that American Western promptly paid that exact amount. (Exhibits 4 and 5 to EUO's; Alfred Reese EUO at 44-45; Francine Reese EUO at 62; Exhibits 7 and 8 to EUO's). If their contention that their Katrina claim was actually worth 11 times what was originally paid has any merit, they failed to provide notice and otherwise make it possible for American Western to adjust the supplemental claim.

### B. AMERICAN WESTERN PAID PRECISELY WHAT THE OWNERS OF THE CREST MOTEL TOLD IT TO PAY IN WRITING.

#### 1. Elements of Bad Faith Under Alabama Law.

Under Alabama law, the plaintiff in a bad faith refusal-to-pay case has the burden of proving the following:

> (a) an insurance contract between the parties and a breach thereof by the defendant;

> (b) an intentional refusal to pay the insured's claim;

> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
>
> In short, plaintiff must go beyond a mere showing of nonpayment and prove a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.

*State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 304 (Ala. 1999) (internal quotations omitted) (italics emphasis in original). "Bad faith, then, is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of a known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will." *Id.* at 303-04 (internal quotations omitted).

The Reeses' bad faith claim fails in this case because, as demonstrated above, there has been no breach of contract on the part of American Western. The bad faith claims are due to be dismissed on this basis alone. Even apart from the threshold requisite showing of a breach of contract, however, the bad faith claims in this case are fatally flawed. The Reeses cannot show the absence of a debatable reason for American Western having handled the claim the way it did.

Alabama law makes it clear that bad faith claims are meant to be difficult to prove. *See Shelter Mut. Ins. Co. v. Barton*, 822 So. 2d 1149, 1154 (Ala. 2001) (bad faith reserved for "extreme cases"). The Reeses' case misses the mark. American Western is entitled to a summary judgment on their bad faith claim.

14

### 2.    There Was No Refusal to Pay the Reeses' Claim.

An intentional refusal to pay is an element of a bad faith claim.  *See Slade*, *supra*, at 304 (intentional refusal to pay is an element of a bad faith claim).  When the Crest Motel presented its claim arising from Hurricane Katrina, American Western adjusted the loss and issued payments based on the Reeses' Sworn Statements in Proof of Loss within the space of three months.  (Exhibits 4, 5, 7, and 8 to Reese EUO's).  The Crest Motel's allegation of bad faith arising from its Hurricane Katrina claim is due to be dismissed because there has been no refusal to pay the claim.

### 3.    American Western Had A Reasonable Basis For Its Manner of Handling the Crest Motel's Claims.

The Crest Motel has the burden of proving that American Western refused to pay legitimate claims without any reasonably legitimate or arguable reason for that refusal.  *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 304 (Ala. 1999).  It cannot meet that burden.  American Western has already demonstrated that it paid the Reeses' claim.  It has demonstrated that it retained an adjuster to inspect the property, document the damage, and adjust the loss.  (Affidavit of Mike Gates; Exhibit 6 to EUO's).  American Western paid the loss after the results of the adjusting inspection had been shared with the Reeses and after they executed Sworn Statements In Proof of Loss declaring the amount of the claim to be $25,081.69.  (Exhibits 7 and 8 to EUO's).

B DWM 946334 v1
2902013-000037 01/06/2011

"When a claim is fairly debatable, the insurer is entitled to debate it … ." *Slade*, 747 So. 2d at 303 (internal quotations omitted) (emphasis supplied). Even if the Reeses could prove a nonpayment − which they cannot − they would have to prove that American Western "had no legal or factual defense to the insurance claim." *National Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1361 (Ala. 1982) (internal quotations omitted). Having received executed Sworn Statements in Proof of Loss from the Reeses, American Western had a legitimate basis for its handling of the claim. Thus, the Reeses cannot maintain a bad faith claim.

Furthermore, there is no evidence that American Western has acted with an intent to injure. American Western paid precisely what the Crest Motel's owners requested it to pay. In order for an insured to recover for bad faith, "an insurer must have acted with an intent to injure." *Coleman v. Gulf Life Ins. Co.*, 514 So. 2d 944, 946 (Ala. 1987) (quoting *Blue Cross & Blue Shield v. Granger*, 461 So. 2d 1320, 1327 (Ala. 1984)). Here, the undisputed evidence is that American Western performed as its insured requested.

There is no evidence that American Western handled the Reeses' insurance claim with any malice or ill will. At a minimum, there was an arguable, debatable ground for issuing payments equaling their Sworn Statements in Proof of Loss. The Reeses cannot go behind a legitimate claim-handling decision and recover extra-contractual damages simply because they are dissatisfied: "The right of an

16

insurer to deny a claim on any arguable legal issue is to be as zealously guarded as its right to decline benefits on any debatable issue of fact, the test of reasonableness being the same." *Barton*, 822 So. 2d at 1154 (internal quotations omitted). Should the insured's evidence fail "to eliminate any arguable reason … any fairly debatable reason on a matter of fact or a matter of law, [the insured] cannot recover under the tort of 'bad faith' … ." *National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 185 (Ala. 1982).

An insured's burden of proof in a bad faith case "is a heavy burden." *National Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982). The Reeses have not met that burden in this case. American Western is entitled to a summary judgment in its favor as to the Crest Motel's bad faith claim.

## II.   AMERICAN WESTERN HAS NO OBLIGATION TO SUBMIT THE REESES' CLAIM TO APPRAISAL.

The Reeses' demand for appraisal is due to be denied because it is untimely and because their claim involves questions of coverage.

### A.   ALABAMA LAW PROHIBITS APPRAISERS FROM DECIDING QUESTIONS OF COVERAGE AND LIABILITY.

In *Rogers v. State Farm Firm & Casualty Company*, 984 So. 2d 382 (Ala. 2007), the owners of a home made a claim on their homeowner's policy after a tornado damaged their house. *Id.* at 383. The plaintiffs maintained their home was a total loss as a result of the tornado. *Id.* Although State Farm agreed that the

storm damaged the plaintiffs' house, its engineer concluded that substantial damage to the property had been caused by a settling foundation and not the tornado. *Id.* at 383-84. State Farm maintained there was no coverage for that aspect of the plaintiffs' claim. *Id.* at 384.

When State Farm invoked the appraisal provisions of its policy, the plaintiffs refused to participate. *Id.* at 384. The trial court eventually ordered the parties to appraisal. *Id.* at 385. At the conclusion of the process, the trial court entered an Order adopting the conclusions of an appointed umpire which was substantially lower than the plaintiffs' policy limits demand, from which the plaintiffs appealed. *Id.* at 384-85. Among the arguments advanced by the plaintiffs on appeal was that the appraisal provision in the State Farm policy was concerned only with the amount of the property damage, and it was not intended to resolve issues of causation or coverage. *Id.* at 388. They argued that State Farm had "improperly adjudicated issues of coverage and causation in the appraisal process." *Id.* at 388.

As a result of the appeal, the Alabama Supreme Court was presented with a matter of first impression, viz., "What are the duties and powers of an appraiser when he or she 'sets the amount of the loss' under an appraisal clause contained in a homeowner's insurance policy?" *Id.* at 389. After examining the holdings of several other jurisdictions, the Court in *Rogers* concluded that questions of coverage and liability should be decided by courts:

> [W]e conclude that the more persuasive authority is the authority holding that an appraiser's duty is limited to determining the "amount of loss"-the monetary value of the property damage-and that appraisers are not vested with the authority to decide questions of coverage and liability; we thus adopt that holding as our rule of law. Questions of coverage and liability should be decided only by the courts, not appraisers.

*Id.* at 392. Applying this principle to the case before it, the Court in *Rogers* noted that although the parties agreed that the roof was damaged by the tornado, they were not in agreement as to the cause of the damage to the house's brick veneer or its foundation. *Id.* "The determination of the causation of these matters," the Court held, "is within the exclusive purview of the Courts, not the appraisers." *Id.*

In a subsequent case decided in the United States District Court for the Southern District of Alabama, an insured condominium owners' association sought to compel its insurer to submit a hurricane damage claim to appraisal. *Caribbean I Owners' Ass'n v. Great Am. Ins. Co.,* 619 F. Supp. 2d 1178 (S.D. Ala. 2008). When the insurer refused to submit the claim to appraisal, the owners' association sued to compel appraisal. *Id.* at 1181. The insurer responded that the claim encompassed issues of causation, making appraisal improper. *Id.* at 1182. The owners' association argued, among other things, that the *Rogers* decision was limited to the unique facts and circumstances of that case. *Id.* at 1183. The court rejected these arguments, noting that the Alabama Supreme Court in *Rogers* was

"espousing a broad rule of Alabama law, without caveats or disclaimers." *Id.* at 1187.

Thus, *Rogers* is the rule of law in Alabama.  The *Rogers* decision governs the disposition of the appraisal issue in this case.

### B.   THE REESES' CLAIM INVOLVES QUESTIONS OF COVERAGE AND LIABILITY.

Here, as in *Rogers*, while the parties agree that certain damage was caused by Hurricane Katrina, viz., the discrete portions of the property identified by the PLS adjuster in 2005, the parties disagree whether the damage in the Reeses' supplemental claim was caused by Katrina.

After Hurricane Katrina, the Reeses prepared written estimates which identified storm damage to the roof, to the motel sign, and to three specific rooms (viz., 30, 31, and 36), along with an inventory of damaged personal property. (EUO of Alfred Reese at 76-78, Exhibits 10 and 11 to EUO's). Likewise, the adjuster from PLS who inspected the property identified storm damage to the roof, to the motel sign, to the laundry room, to the same three specific motel rooms (i.e., 30, 31, and 36), and to various articles of personal property. (Exhibit 6 to EUO's). When its adjusting process was complete, PLS sent copies of its detailed estimates to the Crest Motel along with two Sworn Statements in Proof of Loss, one of which was for "business personal property" and the other was for damage to the building itself. (Exhibit 6 to EUO's). Both the detailed report from PLS and the

20

accompanying proofs of loss estimated the net actual cash value, after applying the deductible, to be $22,648.91 for the damage to the building and $2,432.78 for the damage to personal property. (Exhibit 6 to EUO's).

Both Alfred and Francine Reese executed the proofs of loss which accompanied the detailed PLS estimates, and in November 2005, American Western sent checks to Crest Motel in the amount of $2,432.78 and $22,648.91. (Exhibits 4 and 5 to EUO's; Alfred Reese EUO at 44-45; Francine Reese EUO at 62; Exhibits 7 and 8 to EUO's). Francine Reese has admitted that she negotiated these checks. (Francine Reese EUO at 62).

**These exchanges between the parties in the fall of 2005 demonstrate a general agreement on the scope and value of the loss and on the portions of the property affected by the storm**: both the Reeses and American Western agreed to a specific sum of money based on detailed estimates, and, before the execution of the Sworn Statements In Proof of Loss, the parties were never more than $10,902.53 apart on their respective evaluations of the claim. (Compare Exhibit 6 to EUO's with Exhibits 10 and 11 to EUO's). Four years later, however, the Reeses attempted to claim that virtually every single room of the motel suffered extensive damage. They accompanied their demand for appraisal with a Sworn Statement in Proof of Loss seeking $272,463.38 – over 10 times the amount reflected on the Statements submitted in November 2005. (Exhibit 13 to EUO's).

B DWM 946334 v1
2902013-000037 01/06/2011

While both the Reeses and the PLS adjuster identified just three motel rooms and the laundry room as having been damaged in 2005, the Reeses' 2009 submissions included 14 motel rooms, plus the motel entrance and living area in its damage estimate.  (Exhibits 13 and 14 to EUO's).  When American Western attempted to investigate the supplemental claims, the Crest Motel's owners advised that all the repairs had been made, but they had no receipts or other proof of the repairs.  (Alfred Reese EUO at 20; Francine Reese EUO at 30-31).

American Western disputes that the Crest Motel sustained any damage beyond what was contemplated in the Sworn Statements in Proof of Loss executed by Alfred and Francine Reese in 2005.  To the extent the Crest Motel sustained damage beyond what the Reeses declared in 2005, there is no proof that it was caused by Hurricane Katrina or any other covered peril.

American Western's concerns fit squarely within the ambit of *Rogers.*  As in *Rogers,* American Western agrees that some damage to certain portions of the Crest Motel's property (viz., the areas and components identified during the 2005 adjusting process) sustained damage, but it disputes the Crest Motel's claim that other areas were damaged or that any such damage was caused by an insured peril. In *Rogers,* the Alabama Supreme Court noted,

> Although the parties agreed as to the causation of the damage to the roof, they were not in agreement as to the cause of the damage to the brick veneer or to the foundation.  The determination of the causation

22

of these matters is within the exclusive purview of the courts, not the appraisers.

*Rogers,* 984 So. 2d at 392.  Here, likewise, American Western's coverage concerns must be addressed by the Court.  The Crest Motel's demand for appraisal is due to be denied.

## III.   THE REESES FAILED TO PROVIDE PROMPT NOTICE OF THEIR SUPPLEMENTAL CLAIM.

In November 2005, American Western issued payments totaling $25,081.69 to the Crest Motel.  (Exhibits 7 and 8 to EUO's).  After receiving this money, the Reeses had no further communication with American Western or the adjusters. (Francine Reese EUO at 63).  The Reeses completed their repairs of the damage from Hurricane Katrina in 2006.  (Francine Reese EUO at 26).  Thus, if the Crest Motel was in fact damaged as extensively as the Reeses are now attempting to claim, and if they did in fact make the extensive repairs they now claim, they were on notice in 2006 that the Crest Motel's damages far exceeded the estimates PLS sent in November 2005.

The Policy required the Crest Motel to give American Western "prompt notice of the loss or damage."  (Case 1:10-cv-00516, Document 1-1).

Under Alabama law, notice provisions of this type have been construed to mean that "notice must be given within a reasonable time in view of the facts and circumstances of the case."  *Haston v. Transamerica Ins. Serv.,* 662 So. 2d 1138,

1141 (Ala. 1995) (internal quotations and citations omitted).  The two factors to be considered in determining the reasonableness of a delay are (1) the length of the delay and (2) the reasons for the delay.  *Id.*  If there is no reasonable excuse for a delay in giving notice, the issue may be decided as a matter of law.  *Id.*  Here, the Reeses waited approximately three years before notifying American Western that their loss supposedly was substantially greater than what had been paid in 2005. The Reeses have no reasonable explanation for this delay.

The only explanation offered by the Reeses for their three-plus year delay in notifying American Western of its supplemental claim is that, **before he provided a written copy of his detailed estimates,** the claims adjuster told Mrs. Reese in a phone call that $25,081.69 was all American Western would pay on the loss. (Francine Reese EUO at 56-57).  The estimates, however, provided a detailed explanation as to why the proposed payout totaled $25,081.69.  (Exhibit 6 to EUO's).  The estimates supplied by PLS provided detail as to precisely which areas of the Crest Motel were deemed to have sustained damage during Hurricane Katrina.  Upon receiving the detailed estimates, the Reeses were on notice of the bases for American Western's payment on the loss.  If there were items the Reeses believed to have been omitted, they should have notified American Western.  If, as the Reeses claim, they had an immediate disagreement with the written estimates, they should have invoked the appraisal provision of the Crest Motel's policy at that

24

time, or otherwise sought a resolution.  Instead, their testimony is unequivocal: they attempted no further communication with PLS or American Western after cashing the checks American Western sent to pay for the loss.  (Francine Reese EUO at 56-57).

Once the Reeses discovered the motel's damages went beyond the 2005 PLS estimates, they had a duty to provide prompt notice of this supplemental claim – **especially in view of the fact that this supplemental claim supposedly exceeded the value of the original claim many times over.**  Their supplemental claim is on a different order of magnitude than their original claim.  For example, the PLS estimates identified three motel rooms which required repairs.  (Exhibit 6 to EUO's).  This compares to the Reeses' 2008 estimates which identified repairs to 14 motel rooms.  (Exhibits 13 and 14 to EUO's).  The Reeses claim they made all of these repairs in 2006.  It should have been apparent to them that this work far exceeded anything PLS or American Western had contemplated.  At the very least, they should have notified American Western that the motel had sustained far more damage than was reflected in the PLS estimates and that they were undertaking repairs.  Instead, if the Reeses are to be believed, they made the extensive repairs, and, in the process of doing so, managed to keep no record of any expense, and then made no effort to notify their carrier of this activity until three years later.  By the time the Reeses got around to notifying American Western of their

B DWM 946334 v1
2902013-000037 01/06/2011

supplemental claim in 2009, there was no way to verify that (1) the damage actually occurred, (2) if so, its cause, (3) whether repairs were actually made, and (4) if so, their cost.

For example, as an illustration of the problem, consider the following testimony about the repairs to one of the rooms:

> **Q**   Still, we go over to page 8 and we're still – I guess we're in the bathroom of room 34 now.  Did you replace the sink in the bathroom in room 34?
>
> **A**   Yes.
>
> *       *       *       *
>
> **Q**   Why did it need replacing?
>
> **A**   Well, once it was damaged, it was old and so forth and it needed to come out.
>
> **Q**   How was it damaged?
>
> **A**   Leaking and so forth.
>
> **Q**   It was leaking where?  Where was it leaking?
>
> **A**   Under the bottom of the sink.
>
> **Q**   Was that caused by Hurricane Katrina?
>
> **A**   I don't know.

(Alfred Reese EUO at 96).  The Reeses' 2008 estimates contemplate removing and replacing 14 sinks in 14 different rooms, among them Room 34, at a cost of $194.94 per sink.  (Exhibits 13 and 14 to EUO's).  If these components were

26

actually replaced, no one can now say whether Hurricane Katrina made it necessary. The Reeses' delay in notifying American Western of their supplemental claim has made that impossible. The same holds true for the other scores of elements that make up their current claim of $272,463.38. This fact alone illustrates that the delay was unreasonable.

Under the facts and circumstances of this case, waiting three years to notify American Western of a ten-fold supplementation to the original claim was excessive and unreasonable. The Alabama Supreme Court has held as a matter of law that much shorter delays were unreasonable. *See, e.g., Haston,* 662 So. 2d at 1141 (two year delay without an excuse was unreasonable as a matter of law); *Correll v. Fireman's Fund Ins. Co.,* 529 So. 2d 1006, 1009 (Ala. 1988) (one-year delay without an excuse was unreasonable as a matter of law); *Pharr v. Continental Cas. Co.,* 429 So. 2d 1018, 1019 (Ala. 1983) (eight-month delay without an excuse was unreasonable as a matter of law); *Southern Guar. Ins. Co. v. Thomas,* 334 So. 2d 879, 883 (Ala. 1976) (six-month delay without an excuse was unreasonable as a matter of law). Under Alabama law, a three-year delay without a valid excuse is unreasonable as a matter of law. American Western is therefore entitled to a summary judgment on the Reeses' supplemental claim.

IV.  **THE REESES CANNOT PROVE THAT THE DAMAGE IN THEIR SUPPLEMENTAL CLAIM WAS CAUSED BY HURRICANE KATRINA.**

The insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy. *See Colonial Life & Acc. Ins. Co. v. Collins,* 194 So. 2d 532, 535 (Ala. 1967). The Policy's coverage clause provides,

A.  **Coverage**

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Property Coverage Form at 1).

Here, in November 2005, the Crest Motel's owners executed Sworn Statements In Proof of Loss valuing their claim at $25,081.69. (Exhibits 4 and 5 to EUO's). Between Hurricane Katrina and the execution of the Sworn Statements In Proof of Loss, they prepared separate estimates on their own valuing their claim at either $38,484.22 or $36,934.22. (Exhibits 10 and 11 to EUO's of Alfred and Francine Reese). In 2009, however, the Reeses presented a Sworn Statement in Proof of Loss claiming the Crest Motel's damage from Hurricane Katrina totaled $272,463.38. (Exhibit 13 to EUO's). If the testimony of the Reeses is to be believed, all of the repairs suggested in these estimates were made in 2006. (Francine Reese EUO at 26). Thus, **the Reeses had fully repaired the Crest Motel before the 2008 estimates were even generated.** Because the Crest Motel was repaired in 2006, no one can prove the 2008 repair estimates are in any way

28

tethered to reality.  The estimators had to simply assume it was necessary for the entire motel to have undergone extensive repairs after Katrina.  Assuming the extensive damage suggested by the 2008 estimates actually occurred, it is now impossible for anyone to determine its cause.

The Reeses cannot prove the damage in the estimates they provided American Western in 2009 actually occurred.  They cannot prove what caused the damage they now claim.  They cannot prove when the damage they now claim occurred. *See American States Ins. Co. v. Martin,* 662 So. 2d 245, 250 (Ala. 1995) (to be covered, injury "must fall within the policy period for it to be covered").

Even if one indulges the Reeses and assumes that their claim that they engaged in all of the repair work suggested in the 2008 estimates is somehow worthy of belief, no one can prove that this damage was caused by a Covered Cause of Loss.  American Western is entitled to a summary judgment in its favor.

B DWM 946334 v1
2902013-000037 01/06/2011

## CONCLUSION

Based on the foregoing, American Western Home Insurance Company respectfully urges the Court to enter a final summary judgment in its favor.

Respectfully submitted,

/s/ David W. McDowell
DAVID W. McDOWELL
(ASB-7713-L69D) Attorney for
American Western Home Insurance
Company

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Wells Fargo Tower, Suite 1600
420 Twentieth Street North
Birmingham, Alabama 35203
Telephone:  (205) 328-0480
Facsimile:  (205) 322-8007

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2011, I have electronically filed the foregoing document with the Court's electronic filing system to all parties indicated on the electronic filing receipt.

Gene Warhurst, Esq.
Attorney at Law
Post Office Box 941
Mobile, Alabama 36601

/s/ David W. McDowell
OF COUNSEL

30