IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|   |   |   |
|---|---|---|
| AMERICAN WESTERN HOME INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 10-516-CG-N |
| ALFRED REESE and FRANCINE REESE, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion for summary judgment (Doc. 28), defendants' response in opposition (Doc. 35), and plaintiff's reply (Doc. 36). As will be explained further below, the court finds that defendants failed to give timely notice of their supplemental claim and failed to show that their supplemental claim was covered by the policy of insurance at issue. The court also finds that nothing in the insurance policy required American Western to proceed with the appraisal process for the supplemental claim before it investigated the validity of the claim. Therefore, plaintiff's motion for summary judgment is due to be granted.

## FACTS

This is a declaratory judgment action filed by American Western Home Insurance Company ("American Western") concerning a policy issued to the Crest

Motel, a sole proprietorship of defendants Alfred and Francine Reese. American Western paid defendants $25,081.69 in 2005 for damage to the Crest Motel caused by Hurricane Katrina. In 2009, defendants submitted a supplemental claim for losses that were allegedly incurred by the Crest Motel as a result of Hurricane Katrina. Plaintiff's complaint seeks a declaration: that it has no obligation to submit the supplemental claim to the appraisal process, that any such damage is not covered because the notice was not proper or was untimely, that the policy is void as a consequence of defendants' misrepresentations, that the supplemental claims result from non-covered causes, that the Crest Motel's claims have been released or satisfied, that the supplemental claim is barred by laches and/or failure to mitigate, that defendants have ratified the previous adjustment of the loss, or that plaintiff has no obligation to pay the supplemental claim to the extent defendants fail to prove that the Crest Motel sustained covered damage during the policy period. (Doc. 1). Defendants filed a counterclaim for appointment of an umpire and continuation of the appraisal proceedings under the insurance contract and for bad faith refusal to pay. (Doc. 6). Plaintiff, American Western, moves for summary judgment as to its claims as well as defendants' counterclaims.

American Western issued an insurance policy to Crest Motel for the period January 13, 2005, to January 13, 2006. (Doc. 1-1). On August 29, 2005, the Crest Motel sustained damage as a result of high winds during Hurricane Katrina and defendants submitted a claim under the policy (Doc. 1, ¶ 16, Doc. 6, ¶ 16). Property Loss Services ("PLS") adjusted the loss on behalf of American Western. (Doc. 29-6,

¶ 1).  PLS inspected the Crest Motel on or about September 26, 2005, and prepared a detailed estimate of the damage. (Doc. 29-6, ¶¶ 3, 4).  PLS identified storm damage to the roof, to the motel sign, to the laundry room, to three motel rooms (rooms 30, 31, and 36) and to several items of personal property.  (Doc. 29-6, ¶ 5; Doc. 29-6 pp. 11-15).  PLS estimated that the actual cash value of the loss to the building was $25,148.91 and the actual cash value of the damage to personal property was $2,432.78. (Doc. 29-6, ¶¶ 6, 7).

Defendant, Francine Reese, prepared two damage estimates for the loss to the Crest Motel, one totaling $38,484.22 and a second totaling $36,934.22. (Docs. 29-8, 29-9).  The damage estimates identified the same areas of damage as indicated by the estimate prepared by PLS. (Docs. 29-8, 29-9).

On November 7, 2005, PLS mailed defendants copies of its estimates along with two statements of proof of loss, the first for damage to the building for $22,648.91 and the second for damage to personal property for $2,432.78.  (Doc. 29-5).  Defendants had talked with American Western before receiving the proofs of loss and had been told that that amount was "what the insurance company was going to pay" and that "they were not going to pay any more than that."  (Doc. 29-4, pp. 19-20).  Defendants disagreed with the amounts estimated, but felt like they did not have a choice. (Doc. 29-4, p. 20).  Defendants signed the proof of loss documents and sent them back. (Doc. 29-4, p. 23; Doc. 29-10; Doc. 29-11).  Defendants did not have any further communication with American Western or PLS concerning the initial claim after November 7, 2005, other than swapping out paperwork and

receiving the money. (Doc. 29-4, p. 24). Defendants received checks in the amount of $2,432.78 and $22,648.91 and negotiated the checks in November 2005. (Docs. 29-12, 29-13). According to defendants, a contractor repaired the Crest Motel's roof in a good and workmanlike manner and all the Katrina related repairs to the motel were completed in 2006. (Doc. 29-3, p. 11; Doc. 29-4, p. 9).

On May 15, 2009, an attorney representing defendants sent a letter to American Western demanding an appraisal and enclosing an estimate dated November 11, 2008, that listed damages that were reportedly caused by Hurricane Katrina. (Doc. 29-14). The estimate listed damages totaling $246,313.54 for damage to the roof and other exterior areas, rooms 34, 35, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, and 32, and to the office. (Doc. 29-14, pp. 5-61). A letter to American Western dated July 31, 2009, enclosed the estimate and requested that an adjuster contact defendants' attorney. (Doc. 29-14, p. 4). An October 7, 2009, letter to American Western enclosed a proof of loss for $274,463.38 in damage that occurred on or about August 29, 2005. (Doc. 29-15). The proof of loss was signed by Francine Reese, and stated that the amount claimed by Crest Motel was $272,463.38 (the amount of the loss minus $2,500.00 deductible). (Doc. 29-15, p. 3).

When asked about specific damage claimed, Alfred Reese testified that he did not know whether the damage to a sink that was replaced in room 34 was caused by Hurricane Katrina. (Doc. 29-3, p. 15). When questioned about the total amount spent on fixing up the motel after Katrina, Alfred Reese said he did not have any

4

idea. (Doc. 29-3, p. 16). "It might have been more [than was listed in the exhibits] or might have been less." (Doc. 29-3, p. 16).

The policy includes the following provisions in its Building and Personal Property Coverage section:

> **E. Loss Conditions**
>
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
>
> * * * *
>
> **2. Appraisal**
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.
>
> **3. Duties In The Event of Loss Or Damage**
> a. You must see that the following are done in the event of loss or damage to Covered Property:
> (1) Notify the police if a law may have been broken.
> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
> (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of

5

loss that is not a Covered Cause of Loss. Also, if feasible, set the
damaged property aside and in the best possible order for examination.
(5) At our request, give us complete inventories of the damaged and
undamaged property. Include quantities, costs, values and amount of
loss claimed.
(6) As often as may be reasonably required, permit us to inspect the
property proving the loss or damage and examine your books and
records. Also permit us to take samples of damaged and undamaged
property for inspection, testing and analysis, and permit us to make
copies from your books and records.
(7) Send us a signed, sworn proof of loss containing the information we
request to investigate the claim. You must do this within 60 days after
our request. We will supply you with the necessary forms.
(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath while not in the presence
of any other insured and at such times as may be reasonably required,
about any matter relating to this insurance or the claim, including an
insured's books and records. In the event of an examination, an
insured's answers must be signed.

(Doc. 1-1, pp. 28-29). The above provisions are duplicated in the "Standard Property Policy" section of the policy. (Doc. 1-1, pp. 40-41).

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

6

for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential

element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B.  Plaintiff's Motion**

American Western asserts that it has no further obligation to defendants regarding their Hurricane Katrina claim because defendants failed to provide timely notice of the supplemental claim and have failed to provide any documentation to support their claim.  American Western also asserts that defendants' counterclaims

8

for breach of contract and bad faith should be dismissed because American Western did not breach the contract, precluding any bad faith claim. American Western further asserts that defendants' bad faith claim should be dismissed as time-barred. Defendants respond that defendants invoked the appraisal provision of their policy and that American Western was required to comply with that provision. Because American Western did not name an appraiser, defendants contend that American Western breached the contract of insurance and waived its defenses.

**1. Timely Notice of Claim**

The insurance policy at issue requires the insured to give "prompt notice of the loss or damage." (Doc. 1-1, pp. 28-29, 40-41). Defendants state that "[t]he Reeses timely gave notice to American Western, which paid the Reeses' claims." (Doc. 35, p. 11). There appears to be no dispute that defendants gave timely notice in 2005 of the original claim, for which they were paid $25,081.69. However, it is also undisputed that additional claimed damage occurred on August 29, 2005, yet defendants did not notify American Western of the additional damage until more than four years later, on October 7, 2009. The supplemental claim is not merely a difference in the value or cost of previously claimed damage, but clearly includes additional damage that was not claimed by defendants or discovered by the claims adjuster in 2005. The estimates submitted by defendants in 2009 identified areas of the building that had not been mentioned in the 2005 estimates and had not been mentioned in any reported communications between the parties in 2005. Additionally, the 2009 claim totals $272,463.38, more than ten times the original proof of loss submitted in 2005 and

9

more than seven times the largest estimate procured by defendants in 2005. The 2009 claim is clearly a supplemental or separate additional claim that represents more than just a disagreement over the value of the 2005 claim.

Even if defendants had not discovered the full extent of the damage until some time after the initial estimates were prepared, all of the damage had to have been discovered before it was repaired in 2006. Defendants admit that all of the damage was repaired in 2006, at least two and a half years before they provided notice of the supplemental claim. "[U]nder Alabama law there are only two factors to be considered in determining the reasonableness of a delay in giving notice to an insurer: the *length* of the delay and the *reasons* for the delay." Haston v. Transamerica Ins. Services, 662 So.2d 1138, 1141 (Ala. 1995) (quoting Southern Guar. Ins. Co. v. Thomas, 334 So.2d 879, 883 (Ala. 1976)). If there are disputed facts, "the question of the reasonableness of a delay in giving notice is a question of fact for the jury." Id. However, "if there is no reasonable excuse offered for a delay in giving notice, the issue may be decided as a matter of law." Id. Where, as here, the insureds have offered no excuse for the delay, reasonable or otherwise, "we must conclude that the delay was unreasonable as a matter of law." Id. (finding delay of over two years unreasonable); S. Guar. Ins. Co. v. Thomas, 334 So.2d 879, 882–883 (Ala. 1976) ("Where the facts are undisputed and only one conclusion is reasonably possible, the question whether or not the insured under a liability policy complied with the requirement of notice is a question of law for the court."). A delay of two and a half years with no reasonable excuse is clearly unreasonable as a matter of law. See Arrowood Indem. Co. v. Macon County

Greyhound Park, Inc., 757 F.Supp.2d 1219, 1228 (M.D. Ala. 2010) ("Alabama courts have previously found delays of six months, eight months, and one year to be unreasonable as a matter of law." citing: Thomas, 334 So.2d at 883; Pharr v. Cont'l Cas. Co., 429 So.2d 1018, 1019 (Ala. 1983); Correll v. Fireman's Fund Ins. Cos., 529 So.2d 1006, 1009 (Ala. 1988)).

**2. Documentation to Support Claim**

American Western asserts that even if the delay in notice was reasonable, it is not obligated to pay the supplemental claim because defendants have failed to provide any documentation to support the claim. Under Alabama law, "the insured… bears the burden of establishing coverage by demonstrating that a claim falls within the insurance policy." Assurance Co. of Am. v. Admiral Ins. Co., 2011 WL 1897589, at *3 (S.D. Ala. May 18, 2011). Since defendants have not provided any proof of damage or record of repairs and the alleged damage has been completely repaired, there is no evidence to support defendants' claim that covered property was damaged beyond the original estimates prepared in 2005.

**3. Appraisal Provision**

Defendants respond that defendants invoked the appraisal provision of their policy and that because American Western did not comply with that provision it has breached the contract of insurance and waived its defenses. The court notes that defendants did not invoke the appraisal provision in 2005 regarding the amount of loss claimed at that time, but only attempted to invoke the appraisal provision upon submitting their new 2009 claim. Under the circumstances, American Western was

11

clearly within its rights to investigate the claim before proceeding with the appraisal process. As stated above, "the insured… bears the burden of establishing coverage by demonstrating that a claim falls within the insurance policy." <u>Assurance Co. of Am.</u>, 2011 WL 1897589, at *3. Defendants seem to believe that, because American Western found that they had coverage in 2005 for the original claim, it cannot deny coverage for any additional claims submitted four years later. However, American Western still has the right under the policy to require defendants to comply with their post loss duties for each claim, including prompt notice of the loss. Defendants did not comply with all of their duties and have failed to show that the damage claimed in their 2009 claim is covered by the policy. Defendants have not pointed to anything in the policy that would require American Western to name an appraiser before it completes its investigation of the claim. There is no evidence that American Western's actions or inactions breached the contract of insurance. Accordingly, the court finds that American Western is entitled to a declaratory judgment stating that no coverage exists for the supplemental Hurricane Katrina claims submitted by defendants.

**4. Defendants' Counterclaim for Breach of Contract and Bad Faith**

Defendants filed a counterclaim for appointment of an umpire and continuation of the appraisal proceedings under the insurance contract and for bad faith refusal to pay. (Doc. 6). American Western paid defendants' original claim in 2005 and to the extent defendants' counterclaim concerns American Western's actions regarding the 2005 claim, defendants have not presented evidence by which a jury could find that American Western breached the contract of insurance or are guilty of bad faith.

12

Additionally, as American Western points out, defendants' bad faith claim is barred by the two year statute of limitations for torts. See ALA CODE § 6-2-38(l).

With regards to American Western's actions or inactions regarding the 2009 claim, as discussed above, defendants have failed to establish that American Western was required to begin the appraisal proceedings under the contract and have failed to show that their supplemental claim is covered under the circumstances. Accordingly, defendants' counterclaim also fails. See Mitchell v. State Farm Fire & Cas. Co., 642 So.2d 462, 466-67 (Ala. 1994)(noting that absent contractual liability, an insured's bad faith claim fails as a matter of law); State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 317 (Ala. 1999)(recognizing that liability for bad faith is limited "to those instances in which the insured's losses [are] covered under the policy").

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment (Doc. 28) is hereby **GRANTED.** Plaintiff, American Western, is ordered to file, **on or before October 27, 2011**, a proposed Declaratory Judgment Order consistent with the findings of this court.

**DONE** and **ORDERED** this 20th day of October, 2011.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE